IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GORDON ROY PARKER,** Plaintiff<br><br>v.<br><br>**Panphil Realty et al.,** Defendants | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **REC'D JUN - 2 2025**<br><br>Case No: 2:25-cv-01493-RBS<br><br>Complaint for Multiple Violations of the Fair Housing Act and the Renters Access Act of 2019, and for Declaratory and Injunctive Relief |

## SECOND AMENDED COMPLAINT

**Gordon Roy Parker**, Plaintiff in the above-styled action, submits this Second Amended Complaint, and in support, avers the following. Defendants Panphil, Nancy Wei, and Zillow are no longer listed.

## THE PARTIES

1. Plaintiff **Gordon Roy Parker** is a resident of Philadelphia, domiciled at the Broad Street Ministry, 315 South Broad Street, #0106, Philadelphia, PA 19107. He prefers to be served by and will accept service by acknowledged e-mail at Gordonroyparker@gmail.com.

2. Defendants **Adam Barsky, New Horizons West I, LP d/b/a New Horizon Housing ("New Horizons West"), AMC Delancey Group, Greenzang Properties, LLC, and Brittney Knox** have filed a joint motion to dismiss and are represented by Defendant Adam Barsky, Esq. They all conduct business within Philadelphia and are subject to the personal jurisdiction of this Court.

## NATURE OF ACTION

3. This is an action rooted in multiple violations of the Fair Housing Act (FHA), and, via supplemental jurisdiction, the Renters Access Act of 2019. It relates both to conduct preceding and following the recent Order of May 19, 2025 dismissing this case.

4. Most of the violations were triggered by advertisements run on nonparty Zillow's website, on Friday, March 7, 2025, or by followup emails, and an e-mail sent to Defendant Barksy to inquire about rentals from his co-defendant clients, each on May 28, 2025. Plaintiff was ordered not to contact them directly, precluding applying directly, which he also considered futile and adversarial.

## STATEMENT OF JURISDICTION AND VENUE

5. Jurisdiction in federal court is proper under 28 USC §1331, because of the existence of federal questions related to the Fair Housing Act, 42 U.S.C. § 3604 *et seq.*

6. Venue in this district is proper because all Defendants either reside, are domiciled, or conduct business within the district, or have appeared in this case; none have contested jurisdiction.

7. Supplemental jurisdiction is also proper, due to the presence of similar federal claims

## BACKGROUND

8. Plaintiff incorporates by reference, the entire contents of all previous paragraphs.

### Procedural Background

9. The original complaint was filed on March 17, 2025; a motion for preliminary injunction was then filed and denied. Defendant Barsky and his clients moved to dismiss this case, after which Plaintiff filed an Amended complaint, followed by these Defendants moving to dismiss again, with that motion granted with leave to amend; a motion for reconsideration was also filed on May 27, 2025.

### Factual Background

10. On or around March 7, 2025, Defendant AMC Delancey, on behalf of former party Delancey Verona Plaza, LLC, placed an advertisement on Zillow's website, for rentals at 4715 Walnut Street ("The Verona Plaza"), which included a minimum credit-score requirement of 650: [1]

---

[1] https://www.zillow.com/apartments/philadelphia-pa/verona-plaza/5XkHx3/



11. Also on or around March 7, 2025, Defendant Greenzang Properties, LLC placed an ad on Zillow for a studio at 503 South 41st Street, which did not specify a minimum credit score, but a follow-up e-mail listed twenty-one properties, and a minimum credit-score requirement for each one:



12. Also on or around March 7, 2025, Defendant Brittney Knox, on behalf of Defendant New Horizons West, e-mailed Plaintiff in response to an inquiry about 4101 Baltimore Avenue, despite the building having an open violation with L&I deemed UNSAFE. She e-mailed Plaintiff in response to his inquiry with a minimum credit-score requirement of 625 and ***no prior evictions***:



## Actions Subsequent To Filing Of Original Complaint

13. Despite being put on notice, via the filing of the Complaint in this action, Defendants have continued their violations of both the Renters Access Act and Fair Housing Act.

14. The most noteworthy violation occurred when nonparty Annie Oliver, acting as an agent for Defendant AMCDelancey, placed a new advertisement for the Verona Plaza, to which Plaintiff replied with an inquiry, leading to the following exchange:

    a. In response to Plaintiff's inquiry, Ms. Oliver e-mailed Plaintiff on April 17, 2025:



    b. Plaintiff then replied twice to Ms. Oliver:



c. In response to these replies, Defendant Barsky contacted Plaintiff to put him "on notice" of potential violations of Bar Association Rule 4.2, which applies only to licensed attorneys:



15. Plaintiff was deterred from applying to these days, as a) doing so would be futile, b) the application fees are prohibitive and would harm Plaintiff's credit-score, making it even more difficult for him to rent, and c) it would force him to rent from hostile landlords with extensive control over tenant privacy and living conditions; if they break these laws openly, what would they do then?

16. Though he previously thought this was obvious, Plaintiff most certainly has engaged in protected activity under the FHA, including a) having filed Parker v. Lee, E.D.Pa. #23-3999, and b) having filed PCHR complaints against Defendant AMC Delancey, who was also aware of this lawsuit:

5



# PHILADELPHIA COMMISSION ON HUMAN RELATIONS
## HOUSING AND REAL PROPERTY DISCRIMINATION INTAKE FORM

**COMPLAINTS MUST MEET CERTAIN REQUIREMENTS.** Please check the boxes to confirm that your claim meets the necessary criteria:

- [x] Discrimination occurred in the city of Philadelphia.
- [x] Discrimination occurred within the past 300 days.
- [x] I <u>have not filed</u> a complaint with the Pennsylvania Human Relations Commission with regard to the same discriminatory acts I will describe in this Intake Form.

**STOP** — If your complaint does not meet the above requirements, PCHR may not be able to investigate it. If you have questions, you may speak with an Intake Representative at 215-686-4670, TTY 216-686-3238.

Some of your answers may require more space than provided here. Please attach additional pages if necessary.

### 1. PERSONAL INFORMATION

| Legal Last Name: Parker | Legal First Name: Gordon Roy | Middle Initial: |
| --- | --- | --- |
| Preferred Last Name: Parker | Preferred First Name: | Middle Initial: |

Preferred Pronoun(s): **He/Him**   **Gordon Roy**

| Date of Birth: 01/06/1957 (January 1, 1957) | Cell Phone: 267-951-4131 | Home Phone: Cell |
| --- | --- | --- |
| Email Address (if available): gordonroyparker@gmail.com | | Work Phone: Cell |

Street Address (Include Apartment or Unit #):
316 South Broad Street, #0108

City, State, Zip Code:
Philadelphia, PA 19107

### 2. FILING ON BEHALF OF ANOTHER PERSON    Yes ☐   No ☐
If yes, what is the name of the person who experienced discrimination?

| First Name: | Last Name: |
| --- | --- |

Relationship to You:

Please attach documentation establishing your authority to file on behalf of person named above.

### 3. NAME OF ORGANIZATION (e.g. property developer, property management company, bank mortgage company) YOU BELIEVE DISCRIMINATED AGAINST YOU

Name of Organization:
AMC Delancey

Street Address: **718 Arch Street, #400N**

| City, State, Zip Code: Philadelphia, PA 19106 | Phone: 215-627-8282 |
| --- | --- |

Email:
https://www.amcdelancey.com/contactus.aspx (website contact form)

**4. BASES OF DISCRIMINATION (Protected Categories)**

**I believe I was discriminated against because of my________.** Please check all that apply. For each category, please state how you identify yourself. *For example*, if you checked religion, please specify your religion (such as Catholic, Islam, Jewish, Protestant, Seventh Day Adventist, Sikh). **For** additional information see website https://www.phila.gov/services/diversity-inclusion-accessibility-immigration/discrimination/

- ☐ Age: [illegible] ________
- ☐ Ancestry ________
- ☐ Color (Difference in skin shade within same race)
- ☐ Disability (or Perceived Disability): [illegible] ________
- ☐ Victim of Domestic Violence, Sexual Assault or Stalking
- ☐ Ethnicity ________
- ☐ Familial Status ________
- ☐ Gender Identity ________
- ☐ Other (Explain): Credit Score (Disparate Impact) ________
- ☐ Marital Status ________
- ☐ National Origin ________
- ☐ Race ________
- ☐ Religion ________
- ☐ Sex/Gender ________
- ☐ Sexual Orientation ________
- ☐ Source of Income ________
- ☐ Retaliation for Prior Discrimination Complaint or Engagingin a Protected Activity ________

**5. DISCRIMINATORY ACTION TAKEN AGAINST YOU**

**How were you harmed? Please check the box next to the discriminatory action taken against you then describe the harm in further detail in the space provided in number 6. Please note this is not a complete list of possible discriminatory actions. If the harm you experienced is not on this list, check the box marked *other*, identify the harm in a few words then describe it in further detail in number 6. Add additional pages if necessary.**

- ☐ Application States or Implies a Preference for or Excludes Person in a Protected Category
- ☐ Eviction
- ☐ Advertising States or Implies Preference for or Excludes Person in a Protected Category
- ☐ English Language Only Rule/ Other Language / Accent Issues
- ☐ Fail to Accommodate Because of Disability
- ☐ Fail to Accommodate Because of Religion
- ☐ Fail to Post Required Notice
- ☐ Financial Inquiry States or Implies a Preference for or Excludes Person in a Protected Category
- ☐ Give False or Misleading Information About a Property
- ☐ Harassment / Sexual Harassment
- ☐ Refuse to Make a Mortgage
- ☐ Refuse to Sell Rent or Lease
- ☐ Solicit Owner to Sell When Sale Not Desired
- ☐ Solicit Owner to Sell When Owner's Name Appears on *Do Not Solicit List*
- ☐ Solicit Property for Rent or Sale without Proper License
- ☐ Harassment/ Sexual Harassment
- ☐ Steer Home Buyer or Renter Away from Location
- ☐ Unfavorable Terms Conditions or Privileges of Sale or Rental When Compared to Similarly Situated Person
- ☐ Threatened/Intimidate/ Coerce
- ☐ Transfer Property to Perpetuate Discrimination
- ☐ Deny or Limit Rental or Sale through Quota System
- ☐ Accept or Retain Listing with Understanding that Discrimination may be Practiced in Connection with Sale Rental or Lease.
- ☐ Other (Explain) Credit Score (Disparate Impact/Disability) ________

| Date | Action (For example: I was evicted) | Name and Title of Person Responsible |
|---|---|---|
| 03/07/2025 | Placed an illegal ad with Zillow for Verona Plaza, 4715 Walnut Street, Philadelphia, PA 19139. Ad stated a requirement for a credit score of 650+. | Annie Oliver, Agent (267) 460-7991 |
| | Link to ad: https://www.zillow.com/apartments/philadelphia-pa/verona-plaza/5XkHx3/ | |

6. Please describe the actions or events that you believe were discriminatory. Be specific and include date, action and name of person responsible. Add additional pages if necessary.

7. Why do you believe these actions were discriminatory?

It is illegal under the Renters Access Act of 2019 to have a blanket credit-score requirement for rentals. This is also disparate impact discrimination against the disabled under the Fair Housing Act.

8. What reasons, if any, were you given for the actions taken against you? Who said it and what is their job title?

Not applicable. It was an ad. Presumed reasons include indirect discrimination against the disabled who are likely to have low credit scores

9. Do you believe the reason(s) given to you were false? Why?

Not applicable

17. On May 27, 2025, secondary to the Court's directive not to contact his clients directly, Plaintiff e-mailed Defendant Barksy to express interest in renting from his clients, and to ask why he

8

should expect his credit score (currently 575-600 but as high as 712 in the past two years). to not disqualify him, making application futile.  As ***the Renters Access Act requires full disclosure*** of a landlord's screening policies prior to application, Plaintiff is entitled to this information.  At present, Defendant Barsky has yet to respond to the e-mail.

### Mitigation And Presumption of Bad Faith

18.   Plaintiff mitigated damage to the public when he settled <u>Parker v. Lee</u>, securing a prepaid, 2200-square foot loft through the end of 2025, to avoid burdening the system in a situation just such as this one.  Moreover, as a terminally ill individual, Plaintiff has far more on his mind than his credit score; were he litigious, as portrayed in earlier pleadings, he could have remained in the loft indefinitely, if not until death, for reasons which are now resolved; instead, he will return possession to the landlord. Given what most similarly situated tenants would have done, Plaintiff compares favorably.

19.   Plaintiff avers that because the Philadelphia Renters' Access Act requires landlords to disclose and not enforce minimum credit-score thresholds in rental advertisements, Defendants' ongoing violations of this ordinance—despite being put on notice—create a presumption of *bad faith* which would make applying for rentals from these landlords futile.

### Plaintiff Is Disabled

20.   Plaintiff is ***terminally ill***; not surprisingly, this has wreaked havoc with his credit score:[2] While his core functions are intact, very little else works.  He has chronic pain requiring a mild opioid, has a paid caregiver (currently family) for three hours a day, has a desk chair for "commuting" to and from the bathroom in his 2200-square foot loft (and has had issues with making it on time), and while he can walk (he did manage to escape during a fire alarm and stumbles downstairs to the rides to his appointments, he is otherwise convalescing and is a semi-invalid.  As such, Plaintiff has few extra

expenses beyond rent other than discretionary, yet also has difficulty enjoying even that income due to illegal housing pressure on his credit-score.

### Current Health Issues
Please review your health issues and verify that the list is up to date. Call 911 if you have an emergency.

| Condition | Started |
|---|---|
| Decompensated hepatic cirrhosis | 12/8/2021 |
| Asthma | 12/8/2021 |
| Chronic airway obstruction | 12/8/2021 |
| Bipolar disorder | 12/8/2021 |
| Hernia | 5/5/2022 |
| Screen for colon cancer | 2/22/2022 |
| Ambulatory dysfunction | 1/18/2024 |
| Malignant neoplasm of upper lobe of left lung | 8/8/2024 |
| Cirrhosis | 9/10/2024 |
| Cataract of both eyes | 6/13/2016 |
| Acne | 8/3/2017 |
| Edema of both legs | 8/4/2017 |
| Abdominal hernia | 5/20/2015 |
| Depression | 5/20/2015 |
| Red blood cell breakdown | 7/28/2015 |
| Thrombocytopenia | 7/28/2015 |
| Mental health problem | 11/12/2018 |
| Housing problems | 11/12/2018 |
| Elevated transaminase measurement | 11/13/2018 |
| Excessive bile pigments (bilirubin) in the blood | 11/13/2018 |
| Decrease of all blood cells | 11/13/2018 |
| Jaundice | 11/13/2018 |
| Elevated glucose | 11/13/2018 |
| Decreased white blood cell count | 11/14/2018 |
| Type 2 diabetes | 6/5/2019 |
| Nail discoloration | 8/7/2019 |
| Toothache | 8/7/2019 |
| Liver disease | 8/16/2019 |
| Cellulitis of oral soft tissues | 8/16/2019 |
| Jaw pain | 8/16/2019 |
| Skin inflammation | 9/29/2020 |
| Urinary frequency | 9/29/2020 |
| Abrasion | 9/17/2021 |
| Bacterial skin infection of leg | 9/17/2021 |
| Chronic skin ulcer, limited to breakdown of skin | 9/17/2021 |
| Elevated blood sugar level | 8/11/2022 |

21. As noted above, Plaintiff has more pressing priorities than something which is already legally irrelevant. He is currently faced with participating in the 2025 World Open – at considerable expense if done properly – as a farewell after a forty-year chess career with a peak in the top five percent, and a method to teach the next generation, but if he must be this mindful of his credit score, he must make a brutal, bucket-list choice an abled-bodied person with plenty of time would not have to make.

### Plaintiff Is Ready And Able To Apply, And Has Made E-mail Inquiries

22. When Plaintiff settled Parker v. Lee, he surrendered possession of his current residence as of December 31, 2025, necessitating his current housing search.[3] Consistent with the Renters Access Act, which requires landlords to provide applicants with their screening criteria prior to them submitting an application (otherwise, applying would be futile), Plaintiff e-mailed Defendant Barsky to inquire about available rentals among his clients, who he was barred from applying to directly by the Court order of May 19, 2025.

### Futility/Danger Of Applying

23. Housing is not employment; a hostile landlord has the keys to his legal adversary's home, and an incentive to invent pretexts for eviction, or far worse (as has happened many times). Employment law does not require a woman to return to an office where she is sexually harassed, yet tenants are expected to seek housing from hostile landlords with a proven history of breaking the law. Application is not only futile, but can literally be life-threatening.

24. Despite the obvious risk, Plaintiff has e-mailed Defendant Barksy to ask him to ask his clients about how to proceed, as otherwise application would be futile, and his co-defendants are required by the RAA to provide their (legal) criteria before Plaintiff shells out money for an application and/or deposit to hold the apartment.

---

[3] Plaintiff could easily have remained in his loft until death, but preferred the peace and certainty that comes with the absence of litigation, but this means he needs to find replacement housing lest he become a financial burden on the state.

### Mitigation In Other Cities

25. Since Philadelphia seems inspired by *The Purge* in the enforcement of its housing policies, since repeated applications (up to *$50.00 per unit*) would appear to serve only to harm Plaintiff financially and torpedo his credit-score, and since finding justice is questionable at best and dubious at worst, Plaintiff is considering other cities in his search, but with his rent prepaid through 2025, this is logistically unfavorable. By contrast, securing future housing earlier in Philadelphia would enable him to transition more smoothly to a better location for managing his disability, preferably near an area hospital and emergency room, plus nearby urgent care. Defendants have multiple properties which would serve these interests.

### Constitutional Rights/Common Carrier

26. Plaintiff avers that landlords have very limited power to deny him or *anyone* a rental: Renting an apartment should be no more difficult than buying groceries or mailing a letter. Processes exist for addressing tenants with financial or behavioral issues. Anyone walking around free should qualify behaviorally, while anyone capable of paying three months rent up front should qualify financially, within ***reasonable*** (and universal) income limitations to ensure financial sustainability.

27. In his motion for reconsideration, Plaintiff asserted both a constitutional right to housing, and that Defendants are ***common carriers of housing***, restricted from denying service except for lack of payment or other good cause. Under this standard, Plaintiff should be able to automatically rent any unit for which he can meet the move-in requirements for rent and security deposits, which should create a presumption that he can pay his rent going forward.

28. Regardless, under this standard, and in parity with homeowners, who are most likely not disabled, Plaintiff should be preapproved for ***any*** rental under a certain amount, in his case at least

12

$1,500.00[4] a month for his share of the rent, given his income, subsidies, and that he would have a similarly-situated roommate for more expensive rentals, who might also be deterred from applying by the credit-score requirement. At the very least, the landlord defendants here have had a chance to clarify, and have declined to do not only this, but to reply at all.

### COUNT I: FAIR HOUSING ACT DISABILITY VIOLATIONS (ALL DEFENDANTS)

29. Plaintiff incorporates by reference, as if set forth verbatim herein, the entire contents of all previous paragraphs.

30. Under 42 U.S.C. § 3604(f)(1), it is unlawful to discriminate in the rental of housing or to otherwise make unavailable or deny a dwelling to any renter because of that person's handicap.

31. Plaintiff is a disabled individual under the Fair Housing Act, having terminal cancer, End-stage liver disease (cirrhosis), stage III COPD, and severe asthma, among other chronic impairments, all of which substantially limit one or more major life activities, including but not limited to breathing, mobility, and capacity to endure environmental stressors.

32. If the housing Defendants were not aware of Plaintiff's disability, they were certainly made aware by this lawsuit, and Plaintiff's e-mail to co-Defendant Barsky.

33. Plaintiff's credit score, currently in the 575–600 range, is directly impacted by disability-related medical expenses, lifestyle choices related to being terminally ill and having a "bucket list,"[5] a

---

[4] As a disabled individual on SSDI and numerous other subsidies, Plaintiff can pay up to $700.00 a month in rent immediately upon receipt of his monthly benefit. He has been on the Section 8 waiting list since 2021, and will soon qualify for senior housing (a few years).

[5] Plaintiff can *easily* pay his rent even if he chooses to cross an item or two off his bucket list, though what was supposed to be an illegal credit score requirement, if not enjoined, will prevent him from fully enjoying what is left of his life. If that's not damages, plaintiff does not know what is. ***Even ChatGPT is outraged***: "Plaintiff is not seeking permission to live beyond his means — he already meets them. Plaintiff strenuously objects – as strenuously as any JAG ever has -- to is being forced to skip meaningful, modest pursuits like the World Open chess tournament in order to chase the artificial, bureaucratic approval of a credit score — even while he can fully afford his rent. That tradeoff, especially at the end of one's life, is not financial responsibility. It is moral injury."

fixed income, and periods of acute health crisis—all of which are beyond his control and legally protected circumstances.

34. Defendants' advertisements, rental criteria, and direct communications confirm that they either explicitly require minimum credit scores (ranging from 625 to 700) or apply screening thresholds that operate to **exclude disabled individuals with predictable financial profiles**—without offering individualized assessment or reasonable accommodation.

35. These policies, on their face and as applied, disproportionately exclude disabled applicants, and thereby constitute disparate-impact discrimination under the Fair Housing Act.

36. Moreover, Plaintiff specifically requested clarification and potential accommodation via his May 27, 2025 email to co-defendant Barsky to communicate his interest to the landlord defendants. No response was received, no waiver was offered, and no invitation to apply was extended; Plaintiff was further barred from directly contacting the landlord Defendants by the Court's order of May 19, 2025, itself the result of Defendant AMC Delancey informing counsel to block contact rather than reach out to Plaintiff to resolve his ongoing claims; the open hostility is clear to any reasonable observer.

37. Plaintiff has shown he is able and ready to apply, and has funds to pay at least three months' rent and security, and that he has made sincere inquiries in accordance with governing law. He has been deterred from applying by immutable and illegally enforced credit-score thresholds and the lack of a lawful screening process, even while arguing that he should not have to meet this standard.

38. Defendants have made housing unavailable to Plaintiff because of his disability, in violation of 42 U.S.C. § 3604(f)(1), and have failed to make reasonable accommodations, including but not limited to minimum credit-score requirements, under 42 U.S.C. § 3604(f)(3)(B).

39. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered mental anguish, frustration, and the ongoing loss of safe, accessible housing opportunities during a

period of serious medical vulnerability, loss of financial freedom, and increased costs.

40. Plaintiff is entitled to declaratory and injunctive relief, compensatory and punitive damages, attorneys' fees if incurred, and any further relief this Court deems just and proper.

## COUNT II: FAIR HOUSING ACT RETALIATION (ALL DEFENDANTS)

41. Plaintiff incorporates by reference, as if fully set forth herein, all preceding paragraphs.

42. Under 42 U.S.C. § 3617, it is unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, any right granted or protected by the Fair Housing Act.

43. Plaintiff engaged in protected activity under the FHA, including but not limited to:

   a. Filing *Parker v. Lee*, E.D. Pa. No. 23-3999, for Fair Housing retaliation

   b. Filing complaints with the Philadelphia Commission on Human Relations;

   c. Filing and maintaining this action against the landlord Defendants;

   d. Requesting lawful disclosure and clarification regarding discriminatory rental criteria in the e-mail to co-defendant Barsky, acting on behalf of the landlord defendants.

   e. Invoking his right to reasonable accommodation in connection with disability-related credit-score impact.

44. All Defendants were aware of Plaintiff's ongoing protected activity during the events at issue. Defendant Barsky, as counsel in Parker v. Lee, had direct and continuous knowledge of Plaintiff's FHA-based claims, and shared legal strategy and communication responsibility across multiple landlord clients in this and prior litigation.

45. Rather than making reasonable accommodation, or clarifying whether their advertised credit-score thresholds could be waived or modified, Defendants—through Barsky and by their own silence—refused to engage with Plaintiff in good faith and allowed continued exclusionary policies to stand

46. When Plaintiff attempted to inquire about rentals in good faith via email to Defendant Barsky, as instructed by the Court, Defendants' response was not to engage or clarify, but to maintain radio silence—an act of institutional stonewalling which, in light of their known legal obligations and Plaintiff's health vulnerability, constitutes actionable interference.

47. Defendants' failure to respond to Plaintiff's FHA inquiries, coupled with their continued enforcement of illegal screening thresholds and their participation in a litigation posture that blocks communication while denying access, reflects a pattern of retaliation: Plaintiff was punished not for who he was, but for what he had done—**asserting his rights under federal housing law.**

48. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered mental anguish, humiliation, delay in securing medically necessary housing, lack of financial freedom, increased costs of housing and searching for housing, and the deterioration of his legal and health standing.

49. Defendants' actions are unlawful under 42 U.S.C. § 3617 and entitle Plaintiff to compensatory damages, punitive damages where appropriate, declaratory and injunctive relief, costs, and any other just relief this Court deems proper.

### COUNT III: RENTERS' ACCESS ACT VIOLATIONS (PHILA. CODE § 9-810)

50. Plaintiff incorporates by reference, as if fully set forth herein, all preceding paragraphs.

51. The Philadelphia Renters' Access Act, codified at Phila. Code § 9-810, prohibits landlords from advertising or enforcing minimum credit-score thresholds as preconditions for rental housing opportunities.

52. Specifically, § 9-810(2)(b) bars landlords from maintaining any policy that automatically declines prospective tenants based on their credit score or tenant screening score falling below a specific numerical threshold, whether derived in whole or in part from a tenant screening report.

53. Despite being subject to this ordinance, all Defendants—including but not limited to AMC Delancey, Greenzang Properties, 2045 Walnut Street Associates, New Horizons West, and Zillow Group—either directly advertised, enforced, or facilitated minimum credit-score requirements for units located in Philadelphia, via Zillow listings or direct communication with Plaintiff.

54. In addition to setting unlawful thresholds (ranging from 625 to 700), Defendants failed to provide their screening criteria in advance of application as required by § 9-810(3), and maintained policies that had the effect of deterring Plaintiff from applying entirely.

55. Plaintiff's email to Defendant Barsky, which specifically requested confirmation of lawful screening criteria and clarification of application process, was ignored, leaving Plaintiff unable to pursue housing without risking financial loss or certain disqualification—an outcome the Renters' Access Act was explicitly enacted to prevent.

56. These violations occurred despite Defendants being on notice through this lawsuit, through Plaintiff's outreach, and through public awareness campaigns surrounding the enactment and scope of the Renters' Access Act.

57. Defendants' conduct thus constitutes a willful and ongoing violation of Phila. Code § 9-810, and supports a presumption of bad faith under both local and federal housing law.

58. As a direct and proximate result of Defendants' violations, Plaintiff suffered statutory injury including loss of housing opportunity, financial harm in the form of deterrence and application fees, and mental anguish, loss of financial freedom, and increased costs, secondary to his inability to transition into medically necessary housing.

59. Plaintiff is entitled to statutory damages of $2,000 per violation as provided by § 9-810(6), along with injunctive and declaratory relief, attorneys' fees if incurred, and any further relief this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Declare that Defendants violated the Fair Housing Act and the Philadelphia Renters' Access Act;

2. Award Plaintiff compensatory damages in an amount to be determined at trial;

3. Award Plaintiff statutory damages as provided under the Philadelphia Renters' Access Act ($2,000 per violation), for each violation established at trial.

4. Award punitive damages where appropriate under the Fair Housing Act;

5. Grant injunctive relief prohibiting further unlawful rental screening practices;

6. Award costs of suit and reasonable attorney's fees if applicable;

7. Award such other and further relief as the Court deems just and proper.

This the 2nd day of June, 2025

*[signature]*

**Gordon Roy Parker, Pro Se**
315 South Broad Street, #0106
Philadelphia, PA  19107
gordonroyparker@gmail.com
(215) 951-4131

IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GORDON ROY PARKER,** Plaintiff  v.  **Panphil Realty et al.,** Defendants | Case No: 2:25-cv-01493-RBS |

## CERTIFICATE OF SERVICE

I, Gordon Roy Parker, Plaintiff in the above-styled action, hereby attest that I have served a copy of the foregoing **Second Amended Complaint,** on the following parties, by **regular mail or hand delivery:**

Adam Barsky, Esq.
KBK Law Group
100 South Broad Street, # 1208
Philadelphia, PA  19102
*Attorney For All Defendants:*
  AMC Delancey
  Greenzang Properties
  New Horizons West
  Brittney Knox

This the 2nd day of June, 2025

_____
**Gordon Roy Parker, Pro Se**
315 South Broad Street, #0106
Philadelphia, PA  19107
gordonroyparker@gmail.com
(215) 951-4131